**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

NOLAN KLEIN,

    Plaintiff,

vs.

JACKIE CRAWFORD, et al.,

    Defendants.

3:05-CV-0463-RLH (RAM)

**REPORT AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE**

This Report and Recommendation is made to the Honorable Roger L. Hunt, Chief United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR IB 1-4.

Before the court is Defendants' Motion for Summary Judgment (Doc. #33). Plaintiff opposed the motion (Doc. #37) and Defendants replied (Doc. #40).

**BACKGROUND**

Plaintiff Nolan Klein is currently an inmate at Lovelock Correctional Center. (Doc. #11). Defendant Jackie Crawford is the former director of the Nevada Department of Corrections (NDOC) in Carson City, Nevada. (Docs. #13, #33). Defendant State of Nevada is the State of Nevada *ex rel* the NDOC. (Docs. #24, 33). Plaintiff's claims against all other Defendants in this actions have been dismissed with prejudice. (Docs. #29, #30). Plaintiffs' remaining claims are made under 42 U.S.C. § 1983 and 42 U.S.C. § 2000cc-1 (Religious Land Use and Institutionalized Persons Act ("RLUIPA")). (Doc. #33).

/ / /

/ / /

Plaintiff is a Wicca practitioner who apparently practices his religion as a solitary practitioner rather than with a group of other Wiccans. (Doc. #6, #37). Count I of Plaintiff's complaint alleges that Defendants have placed, and continue to place, substantial burdens on Plaintiff's religious exercise of Wiccanism during his confinement at Lovelock Correctional Center (LCC). (Doc. #6). He alleges that these burdens do not further any compelling governmental interest, and thus are in violation of RLUIPA. (*Id.*). Further, Plaintiff alleges that these burdens are not narrowly tailored to the least restrictive means available, also in violation of RLUIPA. (*Id.*).

Plaintiff's alleges that enforcement of NDOC Administrative Regulation ("AR") 810 ("Religious and Faith Group Activities and Programs", Doc. #33, D-MSJ 104) has effectively prevented Plaintiff from continuing to exercise his Wiccan religion. (*Id.*). Specifically, Plaintiff alleges that by implementing AR 810 Defendants have violated Plaintiff's rights under RLUIPA by: (1) violating the terms of a settlement agreement entered into by Defendant Crawford and Plaintiff in a separate litigation; (2) allowing the confiscation and desecration of religious property that had been previously consecrated, etc.; (3) discontinuing the practice of permitting Wiccan practitioners to cook meals on "Wicca religious grounds"; (4) discontinuing provision of beans, rice, flour and oil to Wicca practitioners for the preparation of food; (5) prohibiting the religious and/or spiritual use of anointing oils by Wicca practitioners; (6) prohibiting the use of candles, incense and herbs except during group worship only; (7) discriminating against Plaintiff as a solitary practitioner of the Wicca faith by not allowing Plaintiff to order, own, or possess any of the items he needs to perform ceremonies, rituals, etc. while allowing group practitioners to do so; (8) punishing Plaintiff if he does possess those items; (9) preventing Plaintiff from practicing his religion by only allowing him access to the Wicca religious grounds one day a week during the group worship time and punishing him if he exercises his religious beliefs in any other area of the institution; (10) preventing Plaintiff from engaging in the "spiritual and herbal medicine/healing" that is part of his practice as a Wiccan; (11) limiting Plaintiff, a solitary practitioner, to practicing his religion by reading books while allowing group worship, rituals and ceremonies; (12) discontinuing the previous policy of allowing the "Teach An Alais" (sweat lodge)

2

1  used during Sabbats and in rituals; and (13) failing to provide unpaid work proscription days to Wiccan
2  practitioners. (*Id.*).

3  In Count II Plaintiff alleges that Defendant Crawford has violated Plaintiff's rights arising under
4  the First and Fourteenth Amendments of the United States Constitution by implementing AR 810.
5  (Doc. #6). Specifically, Plaintiff alleges that Defendant Crawford (1) implemented the regulation in
6  violation of her obligations under the settlement agreement mentioned above; (2) crafted AR 810
7  without consulting a person "qualified and versed in the tenets, practices, customs, traditions ..." of
8  the Wicca faith while consulting qualified persons with regards to "conventional and/or mainstream
9  religions"; (3) prevented any inmate of the Wicca faith from holding any ceremony with Plaintiff while
10 Plaintiff was in segregation, while treating non-Wicca segregated inmates differently; (4) denied
11 Plaintiff equal access to religious areas as compared with the access afforded to inmates of "established
12 conventional and/or mainstream religions"; (5) denied Plaintiff the use of oils for use in his Wicca
13 rituals while allowing it to those of other "conventional and/or mainstream" religions; and (6)
14 confiscated, desecrated, and refused to return religious property of Plaintiff's, the possession of which
15 Plaintiff asserts was obtained through proper procedures and in accordance with AR 810. (*Id.*). Count
16 II alleges that the above actions alleged violated his due process and equal protection rights under the
17 Fourteenth Amendment and the free exercise clause of the First Amendment. (*Id.*).

18 As relief for these alleged violations Plaintiff seeks injunctive relief enjoining Defendants from
19 applying, receiving, accepting and/or using federal funding or assistance in any manner that would/will
20 benefit the NDOC in any respect, during any period in which they are not in full compliance with all
21 relevant provisions of the RLUIPA. (*Id.* at 9). Next, Plaintiff seeks injunctive relief directing the
22 NDOC to reimburse and return all federal funding and/or assistance applied for, received, accepted
23 and/or used to benefit the NDOC in any manner, to the U.S. Government for any and all periods for
24 which it is determined that the NDOC was not or is not fulfilling its obligations under RLUIPA. (*Id.*).
25 Plaintiff also seeks actual, general and/or compensatory damages against Defendants, sued in their
26 individual capacity. (*Id.*). However, earlier in his complaint Plaintiff states that this lawsuit is against
27 Defendants in their official capacity as well. (*Id.* at 3). Further, Plaintiff seeks punitive damages and

28

1  such equitable relief as would "facilitate Plaintiff in restoring his confiscated religious property to the
2  ritual, spiritual and magical purity as when it was confiscated and desecrated." (*Id.* at 9). Lastly,
3  Plaintiff seeks reimbursement for the costs of litigating this matter. (*Id.*).

## DISCUSSION

*A.*   **Standard for Summary Judgment**

The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court. *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). The moving party is entitled to summary judgment where, viewing the evidence and the inferences arising therefrom in favor of the nonmovant, there are no genuine issues of material fact in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996). Judgment as a matter of law is appropriate where there is no legally sufficient evidentiary basis for a reasonable jury to find for the nonmoving party. FED. R. CIV. P. 50(a). Where reasonable minds could differ on the material facts at issue, however, summary judgment is not appropriate. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995), *cert. denied*, 516 U.S. 1171 (1996).

The moving party bears the burden of informing the court of the basis for its motion, together with evidence demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the party opposing the motion may not rest upon mere allegations or denials of the pleadings, but must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Although the parties may submit evidence in an inadmissible form, only evidence which might be admissible at trial may be considered by a trial court in ruling on a motion for summary judgment. FED. R. CIV. P. 56(c) ; *Beyene v. Coleman Sec. Serv., Inc.*, 854 F.2d 1179, 1181 (9th Cir. 1988).

In evaluating the appropriateness of summary judgment, three steps are necessary: (1) determining whether a fact is material; (2) determining whether there is a genuine issue for the trier of fact, as determined by the documents submitted to the court; and (3) considering that evidence in light of the appropriate standard of proof. *Anderson*, 477 U.S. at 248. As to materiality, only disputes

4

over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes which are irrelevant or unnecessary will not be considered. *Id.* Where there is a complete failure of proof concerning an essential element of the nonmoving party's case, all other facts are rendered immaterial, and the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323. Summary judgment is not a disfavored procedural shortcut, but an integral part of the federal rules as a whole. *Id.*

The court must defer to State prison officials regarding day-to-day prison operations. *Turner v. Safley*, 482 U.S. 78, 84-85 (1986)(holding that "courts are ill equipped to deal with the increasingly urgent problems of prison administration and reform ..." and additional deference to prison authorities is due where state penal system is involved). In order to defeat summary judgment the plaintiff must demonstrate the regulations at issue are not reasonably related to legitimate penological interests. *Bahrampour v. Lampert*, 356 F.3d 969, 973 (9th Cir. 2004).

Further, a permanent injunction against prison officials

> unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right ,and is the least intrusive means necessary to correct the violation ...substantial weight [must be given] to any adverse impact on public safety or the operation of a criminal justice system caused by the relief.

18 U.S.C. § 3626(1)(A).

**B.     Religious Land Use and Institutionalized Persons Act (RLUIPA)**

The Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc. *et. seq.* provides in relevant part:

> No government shall impose a substantial burden o n the religious exercise of a person residing in or confined to an institution, as defined in section 1997 of this title, even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person –
> (1)  is in furtherance of a compelling governmental interest; and
> (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a).

To establish a prima facie case under RLUIPA a plaintiff must prove that the defendants' conduct substantially burdened the exercise of his or her religious practice. *Warsoldier v. Woodford*, 418 F.3d 989, 994-95 (9th Cir. 2005). In *San Jose Christian College v. City of Morgan Hill*, 360 F.3d

5

1024, 1034 (9th Cir. 2004), the Ninth Circuit held that a "'substantial burden' on 'religious exercise' must impose a significantly great restriction or onus upon such exercise." However, the burdened religious exercise need not be central to, or compelled by, a system of religious belief. 42 U.S.C. 2000cc-5(7)(A). Under RLUIPA, "it matters not whether the inmate's religious belief is shared by ten or tens of millions. All that matters is whether the inmate is sincere in his or her own views." *Williams v. Bitner*, 359 F. Supp 2d 370, 376 (M.D. Pa. 2005).

Once the plaintiff establishes a prima facie case, the burden shifts to the government to show that the challenged regulation furthers a compelling governmental interest and is the least restrictive means of furthering that interest. 42 U.S.C. 2000cc-2(b).

When analyzing claims under RLUIPA the court must take account of the burdens that a requested accommodation may impose on non-beneficiaries and also be satisfied that the act will be administered neutrally among inmates of different faiths. *Cutter v. Wilkinson*, 544 U.S. 709, 740 (2005). Preserving or maintaining good order, security, and discipline and conserving limited resources constitutes a compelling state interest. *Id.* at 723. Further, RLUIPA does not require the state to pay for an inmate's devotional accessories. *Id.* at 720 n. 8.

Here, Plaintiff contends that *application* of AR 810 to him violates RLUIPA. (Doc. #6). In contrast, Defendants characterize Plaintiff's claim as alleging that they violated RLUIPA by *promulgating* AR 810. (Doc. #33). The court highlights this distinction to make clear that we are not analyzing whether Defendant Crawford, by participating in the drafting and/or promulgation, at whatever stage, of AR 810, violated RLUIPA. Although Plaintiff includes some facts in his complaint that concern the promulgation of AR 810, he explicitly alleges that it was not until it was *implemented* on November 11, 2004 that his religious exercise was substantially burdened. (Doc. #6). Later in his complaint Plaintiff identifies May 5, 2005 as the date since which he has been "precluded from religious exercise of his Wicca Faith in any meaningful manner ... and continues to be denied his Wicca exercise as of the date of this complaint." (Doc. #6). Thus, whatever allegedly happened during the drafting and promulgation of AR 810 is irrelevant to questions of liability under RLUIPA, since those events preceded the Plaintiff's alleged deprivations.

1    Plaintiff has come forth with evidence that his religious exercise was substantially burdened
2    when AR 810 was implemented at LCC. Plaintiff's verified complaint states that the implementation
3    of AR 810 "has substantially burdened his religious exercise by effectively sweeping and/or stripping
4    away the manner in which he has practiced his Wicca faith, beliefs, custom, [etc. ...]" and that he has
5    been "precluded from exercising his Wicca Faith in any meaningful manner since on or about the 5th
6    day of May 2005 ..." (Doc. #6). He also details the specific ways in which the exercise of his faith
7    was burdened. (*Id.*). Because this complaint is signed by the Plaintiff and therefore verified, the
8    complaint itself counts as evidence insofar as the Plaintiff has personal knowledge of the matters
9    asserted therein. Plaintiff would have personal knowledge of the facts asserted above and thus the court
10   must accept as evidence Plaintiff's own assertion that his faith was substantially burdened. Further,
11   Plaintiff's verified complaint and the affidavit attached to his opposition also provide the court with
12   evidence that Plaintiff's religious exercise, as a solitary Wiccan, was substantially burdened by the
13   implementation of AR 810

14   Defendants argue that it is immaterial that Plaintiff self-classifies as a Wiccan Solitary
15   Practitioner: "whether he claims to practice that faith in solitude does not alter the fundamentals of his
16   religious belief." (Doc. #40). However, the court understands Plaintiff's position to be that the solitary
17   nature of his practice *is* of fundamental importance to his religious belief. (*See* Doc. #37). According
18   to Plaintiff, as a solitary Wiccan he would violate his core beliefs if he participated in group Wiccan
19   worship: "To falsely sign-up as a practicing Group Member of the Wicca Faith, would require me to
20   abandon my sincere religious exercise and beliefs as a solitary practitioner of the Wicca Faith, ..."
21   (Doc. #37, affidavit of Plaintiff). Defendants also argue that Plaintiff has not been substantially
22   burdened with regard to Plaintiff's alleged lack of access to herbs he considers necessary for his practice
23   or his alleged inability to use certain religious items. They argue that Plaintiff cannot be substantially
24   burdened with regard to these alleged deprivations because he could get them if he would simply place
25   himself on the list for the Wicca group. As explained above, the Plaintiff has asserted that placing
26   himself on such a list would violate his sincere religious beliefs. Further, it is not for a secular court
27   to determine what is religiously orthodox. *See Thomas v. Review Board of Indiana Employment Sec.*
28
7

*Div.*, 450 U.S. 707, 716 (1981). As such, Defendant's argument suggests that there is a dispute of material fact regarding the sincerity of Plaintiff's alleged belief that solitary practice is mandated by Wicca, in Plaintiff's view. Such a dispute creates an issue of material fact regarding whether Plaintiff's exercise has been burdened. Given the above, the court finds that a reasonable fact finder could find that Plaintiff's faith was substantially burdened.

Our inquiry does not end here. Even assuming that Plaintiff has made out a prima facie case, Plaintiff's RLUIPA claim can only go forward if the government fails to show that AR 810 furthers a compelling governmental interest and that it is the least restrictive means of furthering that interest. 42 U.S.C. 2000cc-2(b). As stated above, when analyzing claims under RLUIPA the court must take account of the burdens that a requested accommodation may impose on non-beneficiaries and also be satisfied that the act will be administered neutrally among inmates of different faiths. *Cutter*, 544 U.S. at 740. Preserving or maintaining good order, security, and discipline and conserving limited resources constitutes a compelling state interest. *Id.* at 723.

Defendants have come forth with only two items of evidence purporting to show that the NDOC has a compelling governmental interest in limiting these items and that the way in which AR 810 is applied at LCC is the least restrictive means available: (1) portions of the transcript from Plaintiff's deposition, (2) the affidavit of Dorothy Nash Holmes, Deputy Director of the Correctional Programs Division.

The first referenced portion of Plaintiff's deposition is one in which Plaintiff testifies that he understands Defendants' counsel's argument that if Plaintiff were permitted to have four different types of oil some inmates might get jealous and complain that they did not get four types of oil as well. (Doc. #33, D-MSJ 31, p. 121, 11-15). The fact that Plaintiff manifested his understanding of the scenario Defendant's counsel explained, which goes on for thirty-two lines in the transcript, does not mean that it is a fact. Counsel presented it as a hypothetical concern that he expects his client to have, not an actual concern that they did have. (*Id.*). This evidence does not persuade the court that the only reasonable conclusion a fact finder could come to when presented with this evidence is that the government has a compelling interest in preventing jealousies among or between inmates. The

8

1 government may very well have such an interest but counsel's raising it in this manner does not show
2 that the government has such an interest.

3 Defendants also reference a portion of the deposition transcript where Plaintiff explains to
4 counsel that Ms. Nash Holmes told the Wiccans that they could no longer have fires because they are
5 a security threat. (Doc. #33, D-MSJ 33, p. 128-29). This does not constitute competent evidence that
6 Plaintiff or any other Wiccan actually is a security threat. At best, this is evidence of Plaintiff's mental
7 impressions regarding the reason for fires no longer being allowed. Plaintiff's mental impressions as
8 to why the fires are no longer allowed are not relevant here.

9 The second item of evidence referenced is the affidavit of Dorothy Nash-Holmes, Deputy
10 Director of the Correctional Programs Division. (Doc. #33, D-MSJ 212). As support for Defendant's
11 assertion that "AR 810 accommodates inmates, [sic] within reasonable budgetary and security
12 constraints," Defendants offers an equally conclusory statement from Ms. Nash-Holmes: "it costs the
13 NDOC fiscal resources to accommodate the various faith group members." Although the affidavit
14 provides examples of the types of costs incurred, such as costs of storing special foods and manpower
15 costs to supervise the worshiping inmates, *id.*, it does not provide further details that might enlighten
16 the court as to the magnitude of the burden this places on the NDOC. As such, the court cannot analyze
17 whether the challenged regulation, AR 810, in fact is the least restrictive means available to advance
18 a compelling state interest.

19 Defendants cannot simply assert cost and security as compelling government interests without
20 any supporting evidence regarding the alleged costs and security and concerns. Likewise, Defendants
21 cannot simply assert that their current policies are the least restrictive way of achieving their compelling
22 interests. Without more, the court cannot recommend finding in Defendants favor on this issue. There
23 remain unresolved questions of material fact. For the reasons set forth above, the motion for summary
24 judgment on the RLUIPA claim (Doc. #33) should be **DENIED**.

25 **C.     Plaintiff's Equal Protection and Due Process Claims**

26 There is no *respondeat superior* liability under § 1983. *Hydrick v. Hunter*, 466 F. 3d 676, 689
27 (9th Cir. 2006). There must be a showing that the defendant personally participated in the alleged rights

28

9

1  deprivation. *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002); *see also Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). Thus, in the case of a supervisor or official, in order for liability to attach, the supervisor must have "participated in or directed the violations, or knew of the violation and failed to act to prevent them." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

Equal Protection Claims

Here, Plaintiff has not alleged that Defendant Crawford was personally involved or knew of the alleged violations and failed to prevent them. Plaintiff alleges that Defendant's personal liability attaches because she personally participated in the drafting and passage of AR 810, which Plaintiff alleges made possible all the unfair treatment he has allegedly suffered. (Doc. #37). Plaintiff also alleges that Defendant Crawford implemented AR 810. (Doc. #37). He cites to D-MSJ 114, a page of an attachment to Defendants' motion (Doc. #33) that bears Defendant's signature, evidencing her approval of AR 810. Plaintiff also cites to D-MSJ 89, also an attachment to Defendants' motion, which is the signature page for AR 809, a regulation that deals with rules regarding the religious practice of Native American inmates. (Doc. #37). These, without more, do not amount to evidence of Defendant Crawford's implementation of the regulation. Even if AR 809 and AR 810, as implemented at LCC, have the effect of providing greater rights to Native Americans than to Wiccans, or even if AR 810 was implemented in a way that discriminates between Wiccans and non-Wiccans, unless Plaintiff can show how Defendant Crawford was involved in that implementation, no 1983 liability can attach for a violation of Plaintiff's right to equal protection. The parties have not brought the court's attention to any evidence tending to show that Defendant Crawford was personally involved in implementing these regulations or even that she was personally involved in the day to day operations at LCC, such that she would have reason to know Plaintiff's rights were being violated in the ways he alleges.

Therefore, for the reasons set forth above and because Defendant Crawford is the only remaining defendant on Count II, the court recommends that the Defendants' motion for summary judgment (Doc. #33) on Plaintiff's Count II equal protection claims be **GRANTED** .

///

Due Process Claims

The crux of Plaintiff's due process claims seems to be that Defendant Crawford used the promulgation of AR 810 to "avoid her obligations under the [settlement] agreement." Violation of a settlement agreement is a breach of contract, not a constitutional violation. *O'Connor v. Colvin*, 70 F.3d 530, 532 (1995). Further, Plaintiff has alleged no other way in which Defendant Crawford was personally involved in any other allegations he has made that might be construed to allege a deprivation of due process. As such, the Defendants' motion for summary judgment on Plaintiff's Count II (Doc. #33) due process claims should be **GRANTED**.

Thus, only Plaintiff's First Amendment claim remains from Count II. Defendants' motion did not raise any arguments about why summary judgment should be granted on Plaintiff's First Amendment claims, although they mention it and so are obviously aware that Plaintiff's Count II includes a claim of First Amendment violation. (Doc. #33, p. 5). Thus, although Plaintiff's First Amendment claim might be subject to the same infirmities as Plaintiff's other Count II claims, the court thinks it would be improper to deprive the Plaintiff of the chance to bring forth any evidence he might have of Defendant Crawford's personal involvement in allegedly infringing on his First Amendment rights.

## RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that the District Judge enter an order **DENYING** Defendants' motion for Summary Judgment (Doc. #33) on Count I, **DENYING** Defendants' Motion for Summary Judgment (Doc. #33) on Plaintiff's Count II First Amendment claim, and **GRANTING** Defendants' Motion for Summary Judgment (Doc. #33) on Plaintiff's Count II equal protection and due process claims.

/ / /

/ / /

/ / /

/ / /

/ / /

The parties should be aware of the following:

1.      That they may file, pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, specific written objections to this Report and Recommendation within ten (10) days of receipt. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2.      That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1), FED. R. CIV. P., should not be filed until entry of the District Court's judgment.

DATED: February 13, 2007.

_____
UNITED STATES MAGISTRATE JUDGE